The next case for oral argument this morning is Thomas v. Carmichael, appeal number 23-2552. Good morning. Good morning, Judge. Judge, excuse me. Nicholas Goen, I represent the appellant, Derek Thomas. I'm going to reserve two minutes for rebuttal. Judges, you know the facts in this case, but just as a one-second overview, we're here because Mr. Thomas was brutally and continuously beaten unconscious and sexually assaulted by a violent cellmate. Mr. Thomas, in the only practical response that he could have, was to reach out to the front-line employees at the Bureau of Prisons at the prison that he was at, a counselor, psychologist, nurse, a handful of correctional officers, etc. Each ignored his pleas for assistance. That's the reason we're here. These circumstances establish an application of bivens within the confines of Carlson and certainly, Your Honors, do not provide or entitle the individual defendants with qualified immunity. Mr. Goen, I want to start with your failure to protect bivens claim. I think you would acknowledge that the Supreme Court has never recognized such a bivens claim, a failure to protect. We acknowledge that the Supreme Court has not specifically recognized a failure to protect bivens claim. How could we, putting aside our opinion in Sargent, and I'll come to that in a minute, but given the Supreme Court's recent Egbert opinion and their directive that even a modest extension of an existing context is all but forbidden, how can we extend bivens relief to a failure to protect claim? What I would argue, Judge, is even though the Supreme Court has not specifically addressed failure to protect as a bivens doctrine, we would argue that in this situation, this factual circumstance, that it actually falls under Carlson because this was. . . Your Eighth Amendment medical claim is closer to Carlson. We could get to that, but failure to protect is a very separate claim and something that has not been recognized and seems like more than a modest extension. I hesitate to say that this is a modest extension. I hesitate to say that it is an extension. I know you don't want to. I understand that, but. . . It's not that I don't want to. I hesitate to say that. What I would say is although the medical claim is more clearly directed toward Carlson, the failure to protect is also a Carlson issue because it was directed toward these front-line medical workers. But then you're saying any kind of bivens claim brought against front-line medical records should be cognizable, and that is very against what the Supreme Court has said. I wouldn't say that any. . . I'm not saying otherwise. My argument is because in this situation, where you're talking about Dr. Carmichael and Counselor Jocelyn, these were individuals that although they are not, as appellants argue, they are not necessarily medical doctors. Not necessarily. They're not medical doctors. However, these were medical providers, mental health providers, for whom Mr. Thomas was communicating with, relying upon, and indicating what his injuries were as a result of these brutal attacks. So what we would argue is this falls more in line with a Carlson argument and is on all fours with Carlson as opposed to something being an extension because, of course, an extension of bivens is in most situations disregarded. How do you get around Sargent, then? A recent opinion of ours where we held there was no bivens claim for a failure to protect claim in very similar factual circumstances where an official had placed the plaintiff with a cellmate who she knew was violent and he was attacked. The difference, Your Honor, is we're not saying that Carmichael nor Jocelyn had housing obligations. We're not saying that the Bureau of Prisons acted improperly by putting Mr. Thomas in the cell. We're not even saying that Carmichael and Jocelyn were supposed to move Mr. Thomas. What we're saying is they were aware of his injuries and they failed to act. I think that is different from Sargent. Sargent is clear where there's a situation where the plaintiff... But isn't the solution then to move him? Isn't the solution a housing solution? Even under the way you've just construed it, and I'm talking about your failure to protect claim, if, as you said, you were claiming they failed to protect once they were aware of his injuries, the solution is still a housing solution, not to leave him with that particular cellmate. And those are decisions that we have held are unique to the Bureau of Prisons and within the province of the Bureau of Prisons. Yes, Judge. I think there are decisions that can be made other than housing decisions. Other than either moving Thomas or moving his cellmate, what possible solution could there be to the failure to protect? I understand he wanted medical attention as well, but if he got the medical attention and they put them back in the cell, that's not the relief your client was seeking.  He wanted to be taken away, and given his allegations, if they're true, rightly so, he wanted to be housed with a different cellmate. But that's a housing issue that under Bivens we are not supposed to step into. Yes, Judge. There are other options that could be available outside of that. It's not only removing him or removing his cellmate. It's actually identifying whether or not these allegations are true. It's allowing Mr. Thomas to speak with the Canadian consulate as he had requested. It's allowing... So if he had been able to speak and they put him back in the cell, would that have solved the issue? Possibly not. He wanted a different cellmate, or none at all. I can't speak to what he wanted. That's the relief he was seeking. Yes, that is likely the relief he was seeking. However, in this situation, I think he was also seeking a medical relief, and that is where this fits under Carlson. As it relates to Mr. Thomas's deliberate indifference claims, which are more of the medical-related claims, that applies to most of the defendants. Even in that situation, Mr. Thomas is not saying that his claims against the Bureau of Prisons are false. He's not saying this is a policy decision. Once again, this is about individuals, individuals' specific statements that he made to individual defendants requesting relief. Now, we acknowledge and admit, because we must, that each of these individuals are not medical doctors. However, once again, they can't just turn a blind eye to what was happening and what they were alleged. Let's separate the non-medical personnel. Why wouldn't that be an extension of Carlson? Because Carlson dealt exclusively with the doctors and the medical personnel. Right. Carlson also dealt with nurses, Your Honor. That's why I added medical personnel. You're right. But they were all medical personnel. There were no non-medical personnel involved in Carlson, and you're suing both here. So my question for you is related to the non-medical defendants. If we were to say there was a Bivens Eighth Amendment deliberate indifference claim as to those defendants, wouldn't we be extending Carlson? No, you wouldn't be. And the reason is, even the handful of correctional officers who we are suing who are defendants, they, too, were aware of the medical problem. And although there were no correctional officers as related to Carlson, the facts, the issues are approximately the same, and that is aware of the medical condition and the refusal to provide any treatment, the refusal to provide any assistance. It's not even provide treatment. It's the assistance. It's to say, okay, we're going to do X and Y. I can't give you medicine if I'm the correctional officer, but I certainly can provide that information. As a frontline employee, these people are also responsible no different than the medical personnel who are responsible in Carlson. They can't turn a blind eye. They can't stick their head in the sand to say, oh, by the way, this is not our responsibility. We believe that is squarely on par with Bivens through Carlson. Mr. Cohen, are you arguing that the Bureau of Prisons' grievance procedures were not available to your client? We're saying for practical purposes, the Bureau of Prisons' grievance procedures weren't available to him. Didn't he file at least one? He did, Your Honor. Can you explain to me then how they weren't available? Because the assaults continued, they progressed, and they worsened. So for practical purposes, yes, he could have filed something, and he did, but the redress was not there. And the redress really was not available to him until after he was sent to a different prison. Unless there's anything further, I'll reserve two minutes for rebuttal. Okay. You have three minutes and 52 seconds. Thank you. Good morning. Good morning. May it please the Court, Janie Lilly on behalf of the individual defendants. The district court correctly held that plaintiff's novel Bivens claim could not proceed either on a failure to protect theory against two of the individual defendants or a failure to provide adequate medical care against the bulk of the defendants. Those novel Bivens claims would extend beyond the three established Bivens contexts to provide individual damages liability against a wide variety of BOP employees. Yes, Your Honor. No. No. And for that reason, the district court properly found that both the failure to protect and the failure to provide adequate medical care were novel contexts and that multiple special factors precluded recognition of those novel Bivens remedies. The court also correctly concluded that the individual defendants were entitled to qualified immunity if there were a Bivens remedy available for his inadequate medical care claims. If the court has any questions, I'd be happy to address those. It seems that the court has identified that the failure to protect claim is foreclosed by both Sargent and the two-step Abbasi framework and that plaintiff's inadequate medical care claims are novel and would reach into various aspects of BOP administration and administration of medical care claims. The claims against the nurses are not novel in who they're being brought against because Carlson was brought against nurses as well. The identity of defendants might be similar, but as you pointed out earlier, Your Honor, any difference, any material difference, no matter how small is significant. And here, the three nurses that plaintiff has sued were responsible for providing intermittent medical care, an exam in one instance following plaintiff's grievance that he had been assaulted, an exam pursuant to the Prison Rape Elimination Act. And plaintiff hasn't objected that those exams were constitutionally deficient in any material respect. And then, of course, he has sued one nurse who he claims that he never saw. In those respects, they're materially different from the types of direct administration of care at issue in Carlson and this court's recent decision in Brooks. And so, yes, Your Honor, we think that those, while the identity of the defendants might be similar, the theory of liability is innovative, and therefore, the Supreme Court's decision in Egbert and this court's decision in all these Bivens cases would preclude recognition of that novel Bivens remedy. You mentioned the two-step framework. Can we consider the existence of these alternative remedies that you've argued at step one, or do we have to wait for step two to consider those? Your Honor, we have not argued that the court need consider them at step one. We think it's very clear that at step one that these are novel claims and, therefore, have argued that. But can we consider them at step one, or is it your position that you really have to distinguish between step one and then these alternative remedies don't come in until step two? That's how the Supreme Court has articulated the two-step framework, and that's, we think, all that the court needs to apply here in order to affirm the judgment of the district court. Is there any reason not to look at this as two different cases, failure to protect, which we have the Bivens analysis for, and just whether or not there's deliberate indifference? I understand the qualified immunity argument, but also just deliberate indifference on the provision of medical care. Yes, Your Honor, I think the district court screening order and order on summary judgment treats the failure to protect claim and the failure to provide an adequate medical care claim as two separate claims, if that's the point Your Honor is asking. Yes, and I just heard you kind of put in the Bivens gloss over all of it. But if we wanted to, was there any reason that you can see that it wouldn't be appropriate to not address the failure of medical care in terms of a new Bivens context, just decided on whether or not there's deliberate indifference or qualified immunity? Your Honor, I want to make sure that I'm answering your question, and so I'll clarify. The Bivens gloss or the Abbasi two-step framework applies to both the failure to protect claim and the failure to provide an adequate medical care claim. The analysis would be similar. It's a novel claim with respect to both the non-medical and medical personnel, and there are multiple special factors that would preclude that recognition. I take it Your Honor was asking whether the court could decide on qualified immunity, the medical care claim, on qualified immunity instead of on the availability of a Bivens remedy? I think you can view this as two separate questions under Bivens, and the failure to protect is potentially a very easy answer. We agree. The medical care is a little bit different, but that medical care also has both qualified immunity and deliberate indifference issues we would reach. Is there any reason not to reach those and not necessarily get to your Bivens arguments? Yes, Your Honor. I think the question is must the court reach the antecedent question of whether the medical care claims present a novel Bivens remedy? That is antecedent, and the Supreme Court has said that that is an antecedent question, but the court could, in fact, if it wanted to affirm the judgment of the district court, do so with respect to qualified immunity. In order to do that, as we noted in our brief, the court would have to, for instance, assume without deciding that the waived or forfeited opposition to qualified immunity was excused, and we would caution the court, if it were to do something like that, to consider the consequences of excusal and to do so on the nearest grounds possible, but perhaps assuming without deciding that that forfeiture was excused, that it could affirm on the basis of qualified immunity. Of course, if the court were to reach the opposite conclusion, it would have to address each of those arguments. Can you state succinctly why you don't think what this unique medical care was? What made it unique? I'm sorry, Your Honor? Unique medical care. Why is it unique? The medical care that plaintiff requested? I'm not sure that we have argued that the medical care was unique. I think what is unique here is that he has sued not those who are responsible for providing medical care. He has sued a number of BOP employees who were not involved in the regular administration of his medical care, those who were involved in intermittent medical care. You made that argument, but on page 34 and following, you seem to make the argument as well that the medical care he was requesting was unique. You make a point of the fact that some of it was provided by psychologists, and that isn't really medical care, you say. Is that right? Page 34. We argue that his medical care claims are unique and meaningfully different from Carlson for the reasons that I've just explained, that he has sued psychologists for the lack of medical care that BOP has provided as a whole in response to his physical injuries. He has sued a correctional counselor, a special investigative services investigator, for the failure to provide medical care. So it's unique in the respect. My question is, you know, where's the line? You're pushing here. You're pushing, and you're trying to establish, I think, a little bit more substantive law here. How far we know that Bivens covers medical care, and you're quibbling about what medical care is and trying to push the line a bit. Respectfully, Your Honor, I disagree. This Court's recent decision in Brooks made precisely this type of distinction. What does Brooks mean? Your Honor. Tell me. I stayed up all night dreaming about Brooks. Well, if you'll indulge me a little bit further then, Brooks allowed to proceed claims against direct providers for failure to provide correct emergency treatment for appendicitis, but held that vicarious liability was not available against those who were not involved in direct provision of medical care. And in that sense, it's on all fours with this case, in which the plaintiff is suing not the dentists who failed to treat his dental injuries or the medical providers who allegedly could have treated his bruises, but those he allegedly reported injuries to and failed to secure medical care. What's his allegation about the psychologists? The two psychologists, he argues, not that the psychological care they provided. In one instance, Dr. Carmichael provided a suicide risk assessment, and he doesn't suggest that that was inadequate or constitutionally deficient. And the other, Dr. Conner, accompanied a special investigative services investigator in conducting allegations into his assault and then provided follow-on care about his suicide risk assessment. He's not alleging that the psychological care provided in those episodes was somehow constitutionally deficient. They didn't provide contraindicated medication, but what he says- What's he alleging then, in your view? He's alleging that he reported to them that he was experiencing dental issues, medical issues associated with bruises or shoulder pain, and that they failed to report and secure medical treatment from other providers. And that sort of novel, vicarious liability is novel under Bivens and is not a theory that the Supreme Court has adopted and is consistent with Brooks' distinction between claims against direct medical providers for inadequate care and claims alleging novel theories of vicarious or third-party liability. The latter is not available under Bivens, and that's precisely what Plaintiff has sought here. And you don't think there was any medical claim against the psychologists? Not one based on the treatment or the examination provided in those cases. He doesn't allege the suicide risk assessment that Dr. Carmichael provided was inadequate on its own terms. Similarly, Dr. Connor provided a follow-up suicide risk assessment. He does not allege that that was inadequate on its own terms, but merely they failed to go outside of their spheres of authority and secure medical treatment from other BOP providers. And if I may, Your Honor, that sort of theory would upend the hierarchy and structure of BOP's provision of medical care. If Dr. Carmichael, in every encounter with an inmate, feared individual damages liability for failure to report outside of her sphere or secure medical care, that sort of systemic consequence is the type of thing that the Supreme Court has said is a separation of powers concern that should caution hesitation before extending Bivens. There'd be no problem in a 1983 suit, though, would there, in including those liaison individuals as part of the delivery of substandard medical care? That may be, but the Supreme Court and this Court have been clear that vicarious liability is not available under Bivens. That's not vicarious liability. It's conspiratorial liability. Third-party liability of this sort is not available. It is not within one of the existing Bivens contexts. Have the other circuits ruled on this yet? Where do we stand with respect to the other circuits on this? With respect to what issue, Your Honor? With respect to the liability of the liaison individuals, the people who are supposed to get medical care when you complain about it? Your Honor, I don't know that Plaintiff has pointed to an analogous case. Are we walking point on this? Are we the enthusiasts who are out front? Your Honor, I think Brooks is squarely in line with the Supreme Court's decisions. I'm not worried about the Supreme Court's decision. I'm worried about how the circuits are interpreting the Supreme Court's decisions. Your Honor, I'm not aware if Plaintiff has certainly not pointed to anything that suggests that a plaintiff could sue, for instance, a cafeteria worker for the failure of prison doctors for not treating the medical needs. We see case after case in the state systems where it's pretty clear that the medical providers and these medical administrators are working together very closely, very conspiratorially on occasion, to provide very minimal and sometimes medical care that violates the Eighth Amendment. And you're seeming to ask us to really just deny the reality of that relationship. No, Your Honor. We're not asking the court to deny the reality of that relationship. What we're saying is, first of all, there's been no allegation of conspiracy here, and secondly, the Supreme Court has stated very clearly that vicarious liability of the sort that Plaintiff has asserted here is novel underpinnings. How is it called vicarious liability? Liability for failure to treat a shoulder against a psychologist who is not able to treat the shoulder would be three-party liability. Vicarious liability, I thought, is when the servant goes to the relationship of the boss to the worker, if you want. You can see that, but that's not the relationship here. Then, Your Honor, however it is properly characterized, a novel theory of liability against a psychologist, a special investigator for the Bureau of Prisons' alleged systemic failure to treat a shoulder injury is novel under the Supreme Court in this court's case. Well, that use of the word systemic maybe gives us a clue, doesn't it? It is a systemic problem. These people are working together. They have a division of responsibility. They're supposed to work together. And you say, well, the Supreme Court in earlier cases has said one is liable, hasn't said anything about the other, and we're supposed to leave it there. Is that right? This court in a state of Miller v. Marbury makes precisely the same point, that there is a reticulated system and organizational structure within BOP, and there must be. There is a highly complex system of medical needs and reporting structures, and to hold one non-direct provider responsible in individual damages liability for systemic failures by alleged systemic failures by POP to treat a dental injury or other physical injuries is a novel extension of Bivens. But if the court is troubled by that, I go back to Judge Kohler's suggestion, that there is simply no basis on which to hold that these defendants were not entitled to qualified immunity. That issue, as we argue, was forfeited, but even if it were excused, plaintiff has not established that any of these defendants violated the Constitution, much less did so with the requisite specificity under clearly established federal law. The court has no further questions. We ask that the judgment of the district court be affirmed. Thank you, Ms. Lilly. Mr. Cohen, rebuttal. Your Honors, I would like to start where my opposing counsel left off, and that is to say she focused on our argument being novel. We would disagree. We don't, as it relates to the deliberate indifference, this is not a situation where Dr. Carmichael, the psychologist, was uninvolved in this process. She was directly involved, as the facts have been pled. And specifically, this is on par with Carlson, where in Carlson, the officials were aware of the individual's condition and ignored it. This is not a situation of vicarious liability. This is not a situation where the right hand doesn't know what the left hand is doing. This is the same body. This is an individual acting. We're not saying that the dentist had some liability that we haven't brought to the table. That's a separate issue. We're talking about what Dr. Carmichael did and what Counselor Jocelyn did. These are their individual actions that they took. So as to the psychologist, you're not saying that the psychologist should have rendered some type of psychological treatment and he didn't get it. Your argument is that the psychologist learned of these other medical issues and didn't act on it by telling the appropriate medical providers. That is correct, Judge. This is specific knowledge that specific defendants had in their course of dealings, and they ignored it. This is not a situation where the cafeteria worker saw someone getting assaulted and didn't tell his correctional officer. No, this is a specific conversation that Mr. Thomas had with Dr. Carmichael or these other individuals, and they failed or refused to act. As it relates to Judge Kollar's point, whether or not these are two separate cases, arguably they are. Arguably they are two separate distinct actions, and I think the court could look at it in that way. And if the court were not in the mind that we would argue that Carlson also applies to all of it, I think the court could really look at the deliberate indifference piece and say, this is on target with Carlson. And as to the qualified immunity argument, we believe that the court should allow us to make a defense to the defendant's qualified immunity affirmative defense and not punish Mr. Thomas for his prior appointed counsel's failure to raise these issues in the summary judgment briefing below. I don't want to get into details in our briefs, but we believe that it would be fundamentally unfair to consider that this is a waiver or forfeiture of those rights, in particular because there are no new facts being presented, there are no new arguments being presented, and there's no prejudice to anyone involved. However, there would be a prejudice to Mr. Thomas if you weren't going to consider it, in part because this is the defendant's affirmative defense, and if Mr. Thomas were not permitted to rebut that, that would be prejudicial. And based on the facts that have been presented in the record, it is clear that the defendants are not entitled to qualified immunity, at least to the deliberate indifference piece. Specifically, as it relates to the fact that they were aware of his injuries, they were aware of his allegations, and once again, as it relates back to before, Dr. Carmichael, nurse, counselor, did nothing. They were aware. Is there a specific case I can point to that addresses it? No, but the concept is the same. If a correctional officer, prison official, is aware of an injury, they have an obligation to act. My time is up, Your Honors, but I would request that the court overturn the motion for summary judgment and remand this case to the Southern District of Indiana for further proceedings. Thank you, Mr. Godwin. You were appointed to represent Mr. Thomas in this case. Yes, I was, Judge. Thank you for accepting the appointment and for your strong advocacy on behalf of your client. Thanks to you as well, Ms. Lilly, and the court will take the case under advisement. Thank you, Judges. If I may for a quick moment, I just want to point out my young colleagues who assisted with the briefing. Yes, thank you. Thank you, Judge.